STROMBERG MOTOR DEVICES CO. v.
ZENITH–DETROIT CORPORATION.

Circuit Court of Appeals, Second Circuit.
April 16, 1928.

No. 159.

Patents ☞328—1,404,879, claim 4, for carbureting chamber with venturi tubes in carburetor, held valid and infringed; "equivalency."

Patent No. 1,404,879, claim 4, for carbureting chamber in carburetor with venturi tubes, *held* valid, as not constituting mere aggregation, by combining old devices, or as lacking invention, and infringed; "equivalency" being identity of mode and operation and identity of results in the combination in question.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Equivalent.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Stromberg Motor Devices Company against the Zenith-Detroit Corporation for infringement of patent No. 1,404,-879, granted July 31, 1922. Bill dismissed, and plaintiff appeals. Reversed.

Wm. Houston Kenyon, of New York City, and John A. Dienner, Arthur H. Boettcher and Charles A. Brown, all of Chicago, Ill. (Seward Davis, of New York City, of counsel), for appellant.

Gifford & Scull, of New York City, and Byrnes, Stebbins & Parmelee, of Pittsburgh, Pa. (Earle L. Parmelee, George E. Stebbins and C. P. Byrnes, all of Pittsburgh, Pa., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. This suit is for infringement of patent for a carburetor used to supply an internal combustion engine with a proper fuel mixture for the operation of the engine. The claim sued upon reads:

"4. In a carburetor, a carbureting chamber having a mixture outlet, a venturi tube leading to said carbureting chamber, a second venturi tube leading into said first named venturi tube, said venturi tubes having their axes substantially coincident and having air inlets thereto, a fuel inlet leading into said second venturi tube, and means for admitting air to said fuel inlet anterior to its point of discharge into said second venturi tube."

The principal functions of this carburetor are (a) as operated by suction created by the engine it draws atomized gasoline and air into the carbureting chamber and there intermixes them and passes the mixture into the engine; and (b) it automatically varies the richness of the mixture under varying conditions of speed, so that air and atomized fuel shall be in the proper proportions to secure the best results under different conditions in the engine.

There is a tendency for the mixture supplied by a carburetor to become richer—that is, to have a larger proportion of gasoline than air—as the speed of the engine and consequently the suction created by the engine and operative on the carburetor increases. It is essential for the successful operation of the internal combustion engine that this tendency be counteracted or compensated for, and there have been many inventions directed to that end. A carburetor consists generally of a constant level gasoline chamber in which the gasoline is fed to a nozzle which opens into a venturi tube, the inlet to which is opened so that air drawn by the suction of the engine may be drawn through the inlet, past the nozzle, into the mixing chamber, through an outlet into the engine. The gasoline stands below the level of the nozzle outlet, and the vacuum created by the suction of the engine is satisfied in part by the air flowing through the venturi tube and in part by the gasoline flowing from the nozzle whereby the gasoline is drawn into the mixing chamber in a spray which is mixed with air, which has been drawn through the air inlet of the venturi tube, in the normal volume in most cases 16 of air to 1 of gasoline by weight, and in this highly atomized and attenuated state, the mixture is drawn into the cylinder of the engine where it is ignited by explosive expansion and furnishes the power for the operation of the engine.

At the time of the conception of the patent in suit, there were different methods of counteracting or compensating for the tendency to increase richness as the speed of the engine increased. Krebs' invention, of the prior art, provided a carburetor which had a main air inlet with an auxiliary air inlet so closed by a spring pressed valve, that when the suction increased sufficiently to overcome the resistance of the spring, the valve would open, thus admitting additional air. It went into extensive use up to 1915. Another method of compensating for this tendency toward increased richness as suction increased was by admitting air to the fuel inlet anterior to its point of discharge

into the venturi tube, referred to as "air bleeding." This differed from Krebs' in not requiring the moving of parts peculiar to his, but embodied the idea of a plain tube carburetor. An auxiliary well was added to the rudimentary carburetor in which gasoline collected when the engine was idle and from which the collected gasoline was drawn when the engine suction was applied. After the gasoline collected was withdrawn, air was drawn through the auxiliary well, which thus satisfied the suction and so tended to counteract the tendency to overrichness with increased suction.

In the patent in suit, there is a single fuel stream whereas in the appellee's device a compound nozzle is built. The air-bled carburetor was known as in the Ahara patent No. 684,662 granted in 1901. With a carburetor in which there is a single flow of gasoline through a single channel, the air bled into the gasoline flow to counteract the tendency to overrichness at high speeds mingles with the entire flow of gasoline, and, in the carburetor in which there is a divided flow of gasoline through two channels, the air drawn into the gasoline flow to counteract the tendency to overrichness at high speed may be bled into one channel only, and in that case it mingles first with the gasoline in the channel, but later, at a joint inlet in the venturi tube, it mingles with the entire flow from both channels, and the air coming through the main air inlet constitutes the whole mixture supplied to the engine of a proper proportion of air and gasoline at all speeds. There is no difference, in so far as diluting the entire gasoline supply with air is concerned, between bleeding the air into the whole of an undivided gasoline stream and bleeding the same amount into one part of divided gasoline stream where the parts immediately reunite. It has been held that both forms embody the Ahara air-bleeding invention. Stromberg Motor Devices Co. v. Zenith Carburetor Co. (C. C. A.) 254 F. 68.

The patent in suit has a mixing chamber with an outlet into a manifold leading into the engine. The throttle valve is adapted to vary the area of the mixture outlet. There are two venturi tubes coaxially arranged. Each has an air inlet branching from the main air inlet. The main venturi leads directly to the carbureting or mixing chamber, and the second venturi leads into the main venturi. In the second venturi, a fuel inlet leads by multiple openings and that fuel inlet is provided with an air inlet through the opening by an annular channel around the venturi tube leading by the opening to the annular space and then by an opening to the fuel inlet passage. The advance made in the use of the internal combustion motor transportation is said to be due largely to the beneficial results flowing from the improvements in carburetors. Economy secured by a proper proportioning of the air and gasoline, as required by the engine under different conditions of load and speed, requires much refinement in preparing and supplying the engine with a proper mixture of gas. The gist of the invention in suit is the combination of a coaxial double venturi with a fuel inlet which leads into the inner one and which has means for the admission of air thereto anterior to its point of discharge therein, be that fuel inlet single or compound. The range of equivalents for the invention, which includes the air-bled fuel inlet disclosed by the Ahara patent of a divided stream flow of fuel as in the appellee's compound nozzle carburetor and the single stream flow of the appellant's single nozzle carburetor is claimed to be manifest and an inevitable identity in kind of result because with a single stream flow the air-bleed can be made such as to give every possible range of richness or mixture from no air at all to all air possible, and, with the divided stream flow, the range that is possible must lie somewhere between these two extremes from no air at all toward or in the direction of all air possible, and thus it must coincide with a part at least of the total range possible with the single stream fuel flow.

This construction has realized in practice important advantages, such as giving richer mixture at low speeds and much desired greater power, and counteracting more satisfactorily and advantageously toward richness of mixture at high speed, both of which work economy. It atomizes the gasoline more finely, and makes a better intermix with an air column than before. It has met with commercial success. The appellee has turned to it, and its present carburetor employing the double venturi air-bled combination has obtained similar results. It does not demonstrate a difference in operation, as pointed out by the appellee's expert.

But it is claimed that the patent is invalid, first, because it is an aggregation; and, second, because it lacks invention over the prior art. But it seems to be agreed by the experts that the device of the patent in suit is more than a mere aggregation by combining two old devices. The devices used were reproportioned, and they gave combined or co-operative effects. It was no mere addition of an extra venturi. There was readjust-

ment and reproportionment to secure proper combined effect from co-operation of the different features. This claim was carefully considered in the Patent Office, where it was pointed out that there was a peculiar co-operation between the various controlling restrictions air inlets and collecting chambers where co-operation was relied upon to produce the desired results. Indeed, the appellee's expert in his testimony pointed out that favorable results were obtained by the combination of the new double venturi carburetor. The witnesses agreed that a reproportioning was necessary. The air-bled fuel inlet and the double venturi tube co-operated and were arranged in co-operation so as to enable the inventor to get the mixture desired. The air-bled fuel inlet delivered this mixture of gasoline and air into the second or inner venturi where there was a vaporizing rush of other air received through its lower opening and the second or inner venturi delivered this vaporizing mixture into the first or upper venturi where also there was a further rush of still other air received in the lower opening of the upper venturi outside of the inner venturi which acts to draw the mixture or vaporized gasoline thus diluted with the air from the lower venturi to carry it on into the mixing chamber. These operations were superinduced by the stresses of the engine suction, which were constantly changing, and which the liquid gasoline and the fluid air are all constantly seeking to satisfy. There was reaction and interaction and co-operation among all the parts involved in these operations. Whenever the engine suction, which is operative simultaneously upon all the parts, is to any extent satisfied in any of the parts, its strain or pull there was to that extent reduced. The more the engine suction was satisfied by the rush of air through the outer venturi, the air opening through the inner venturi or through the air-bled opening in the fuel passage, the less would it compel the liquid gasoline to flow. In view of what was known in the art, we are not able to say that there was a lack of invention because of the alleged obviousness of this considering the knowledge of the man skilled in the art. While it is true the double venturi tubes were known in carburetors, as in the German patent to Rummel (1907), and that air-bleeding through an auxiliary well was known to carburetors in the Ahara patent (1901), the combination was not conceived or worked out until this inventor came forward. The appellant's inventor

conceived and worked out his invention in 1913, while the appellee's inventor Baverey worked out the combination of the appellee in 1916. He had known of the air-bleeding method in 1906 and there was a persistent and wide-spread demand for improvement in carburetors to overcome the problem here considered. This delay of men who were skilled in the art negatives the idea of obviousness. Hildreth v. Mastoras, 257 U. S. 27, 42 S. Ct. 20, 66 L. Ed. 112. Indeed, it required many tests and long experimenting, as testified to, before the result was accomplished.

The appellee was alive to the need for this improvement. It contested as to priority with the appellant's inventor in the Patent Office proceedings and lost. It asserted that its patentee, Baverey, was first. Now it asserts that the appellant was anticipated by various patents, the most important of which are Jardine and Crawford. But patentability is strongly supported by the conduct of the appellee as well as that of the appellant in adopting and using the double venturi carburetor of the appellant. Eibel Process Co. v. Minn. & Ont. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523; Minerals Separation, Limited, v. Hyde, 242 U. S. 261, 37 S. Ct. 82, 61 L. Ed. 286; Davis-Bournonville Co. v. Milburn Co. (D. C.) 297 F. 846; Permutit Co. v. Harvey Laundry Co. (C. C. A.) 279 F. 713.

Claim 4 is infringed by the appellee's carburetor. There is the identity of structure and mode of operation, and the result is the same. It has a carbureting chamber having a mixture outlet, a venturi tube leading to the carbureting chamber, a second venturi tube leading into the first venturi tube, the venturi tubes having their axes substantially coincident and having air inlets throughout (from which inlet branches one to each tube) a fuel inlet leading into the second venturi tube and means for admitting air into the fuel inlet anterior to its point of passage into the venturi tube.

The Jardine carburetor was considered by the Patent Office and held not to embody the combination of the claim in suit. The claim provides for means for admitting air to the fuel inlet anterior to its point of discharge into the second venturi tube. The Jardine patent consequently does not have the mode of operation and therefore not a characteristic of the invention in issue, nor does it produce the same result. It has an air-bleeding idling jet but that jet does not lead into the venturi tube at all, either pri-

mary or secondary, nor has it the operation to produce the same result. This air-bleeding jet leads to a point near the throttle above the mixing chamber. There is a main fuel inlet which discharges into the second venturi tube, but that fuel inlet does not have any means for admitting air, and it is not air-bled. Its idling jet has means of admitting air throughout and is air-bled, but it does not discharge into the second venturi tube. This construction means an entire absence of the operation and result of the invention of the patent in suit. The fuel inlet of Jardine, which has means for admitting the air thereto, discharges at the throttle. It is a starting or idling jet. If there is to be any co-operation between the air-bled fuel inlet and the double venturi tube, the air-bled inlet must discharge where its operation will be affected by the venturi tubes, and their discharge affected by it; that is, it must discharge into the inner or smaller venturi. That is how the carburetors of both the appellant and appellee operate. The compound fuel inlet of the appellee's carburetor is not connected with a throttle nor with a double venturi as the two separate fuel inlets of the Jardine carburetor are, but is like the single fuel inlet of the patent in suit, and, as a consequence, it has the operation and results of the patent in suit and not those of the Jardine carburetor. The idling jet of the Jardine patent is not the air-bled jet of the patent in suit. It is quite another thing.

The Crawford carburetor, patent No. 1,-116,023 issued November 3, 1914, has right angle venturis and does not embody the combination of the patent in suit. It does not have the same mode of operation. The claim in suit is distinguished from the Crawford patent by specifying the venturi tubes having their axes substantially coincident. This coaxial arrangement of the venturi tubes distinguishes it from the Crawford patent. It is a different structure. The two structures are not equivalent of each other. Equivalency means identity of mode and operation and identity of results in the combination in question. Since there is a difference in the mode of operation and a difference in the results, as shown by experiments, it is unimportant to consider the priority of the date of the application for the patent in suit. Both on the facts and the law, the appellant was entitled to a decree below sustaining the patent and holding it infringed by the appellee's device.

Decree reversed, with costs.