## STROMBERG MOTOR DEVICES CO. v. ZENITH DETROIT CORPORATION.

District Court, S. D. New York.

July 22, 1932.

Seward Davis, of New York City (W. B. Kerkham, of Washington, D. C., and Charles A. Brown, of Chicago, Ill., of counsel), for plaintiff.

Gifford, Scull & Burgess, of New York City (Walter E. Oxtoby, of Detroit, Mich., and Earle L. Parmelee, of Pittsburgh, Pa., of counsel), for defendant.

COXE, District Judge.

This case arises on exceptions to a master's report in a patent accounting. The patent involved is the Mock patent, No. 1,404,879, for a carburetor, which issued January 31, 1922, and was held valid and infringed as to claim 4 by the Circuit Court of Appeals in Stromberg Motor Devices Co. v. Zenith-Detroit Corp'n, 25 F.(2d) 567.

On the accounting, the plaintiff claimed profits only, and, after prolonged hearings before the master, it was found that the defendant's profits from infringing sales were $277,420.58. It was held, however, that, notwithstanding this fact, there could be no recovery by the plaintiff because of a failure to apportion as between the patented and

unpatented features. The plaintiff has excepted to this ruling. It has also excepted to the allowance by the master of deductions from profits of (1) $45,060.57 for extra compensation paid to the defendant's president, and (2) $97,377 for patent royalties paid to the French parent company of the defendant. In addition, the defendant has filed exceptions, challenging rulings of the master denying credit on the accounting for (1) federal taxes paid, (2) amounts expended by the defendant in defense of litigation on the Ensign patent, and (3) bad debts charged off amounting to $16,821.86.

The report on the disputed points is full and complete, and, inasmuch as I agree with the master's conclusions on all questions except on the necessity for apportionment, I shall confine myself to the single question whether the master was right in denying relief to the plaintiff because of the failure to apportion. In all other respects, the exceptions will be overruled.

The defendant, on the argument, and in its brief, has sought also to question rulings of the master in drawing into the accounting two altered structures containing modifications of the infringing carburetor; but, inasmuch as no exceptions were taken to these rulings, I do not think they are open for review at this time.

The master's argument on the question of apportionment is in effect that claim 4 covers only a sub-combination in the larger combination of parts comprising the carburetor, and that there must be apportionment between the patented and unpatented features. He also holds that it is the duty of the plaintiff to make the apportionment, and that, inasmuch as it has not done so, there can be no recovery. The contention of the plaintiff, on the other hand, proceeds on the theory that the patent is for a unitary device, and that the entire salable value of the infringing carburetor is in the Mock invention. It is further insisted that, if an apportionment should be required, it should be made by the defendant, and that, the defendant having failed to supply the requisite information from which such an apportionment might be made, the plaintiff is entitled to recover the entire profits.

Claim 4 of the patent reads: "In a carburetor, a carbureting chamber having a mixture outlet, a venturi tube leading to said carbureting chamber, a second venturi tube leading into said first named venturi tube, said venturi tubes having their axes substantially co-incident and having air inlets

thereto, a fuel inlet leading into said second venturi tube, and means for admitting air to said fuel inlet anterior to its point of discharge into second venturi tube."

In describing the invention, Judge Manton used the following language in the opinion in the Circuit Court of Appeals, Stromberg Motor Devices Co. v. Zenith-Detroit Corp'n, supra, page 568 of 25 F.(2d): "The gist of the invention in suit is the combination of a coaxial double venturi with a fuel inlet which leads into the inner one and which has means for the admission of air thereto anterior to its point of discharge therein, be that fuel inlet single or compound."

The opinion also states, at page 568 of 25 F.(2d), in answer to the contention that the patent was invalid for aggregation: "The devices used were reproportioned, and they gave combined or co-operative effects. It was no mere addition of an extra venturi. There was readjustment and reproportionment to secure proper combined effect from co-operation of the different features."

It will thus be seen that, although the patentee utilized old parts of existing structures, he accomplished an entirely new and beneficial result in designing a carburetor capable of functioning with the two venturis. That the patent was for a carburetor, and did not cover merely a subcombination of some of the operating parts, is emphasized by the language of the patent itself. The patentee first refers to his invention as an "Improvement in carburetors." He then states that the invention "relates to carburetors," and that his object is "to provide a carburetor" which will supply the engine with "a mixture with the most efficient proportions of air and fuel." And, finally, the specification is framed on the theory that the invention is a unitary structure of a carburetor, and not merely a collection of subsidiary parts. That also appears to be the thought of the Circuit Court of Appeals, for in Judge Manton's opinion the patent is referred to as "for a carburetor," and the invention as covering a "carburetor." Moreover, the decree directing the accounting provides that it "shall cover all forms of carburetors or similar devices."

The invention made by Mock not only permeated and pervaded the entire structure of the carburetor, but it created something which could only be used as an integer. In that respect, the device is similar to the converter in Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co., 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, the counter seat in Yesbera

v. Hardesty Mfg. Co. (C. C. A.) 166 F. 120, and the multiple drill in Oehring v. Fox Typewriter Co. (C. C. A.) 251 F. 584. It is also closely analogous to the store service ladder in Orr & Lockett Hardware Co. v. Murray (C. C. A.) 163 F. 54, and the wooden pavement in Elizabeth v. American Nicholson Paving Co., 97 U. S. 126, 24 L. Ed. 1000, both of which were held to be complete unitary things. The cases of Garretson v. Clark, 111 U. S. 120, 4 S. Ct. 291, 28 L. Ed. 371, Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398, Egry Register Co. v. Standard Register Co. (C. C. A.) 23 F.(2d) 438, and Underwood Typewriter Co. v. E. C. Stearns & Co. (C. C. A.) 227 F. 74, are not applicable, as they involved only attachments or minor improvements in existing structures, which contributed little of real value to the different articles.

■ The defendant insists, however, that claim 4 omits some of the essential parts of a carburetor, such as the float, float-chamber, and idle, and that, therefore these must be deemed to be excluded from the combination of the claim. But it is a familiar rule of patent law that elements may be implied to make the device operable. McCarty v. Lehigh Valley R. Co., 160 U. S. 110, 16 S. Ct. 240, 40 L. Ed. 358; Dunn Mfg. Co. v. Standard Computing Scale Co. (C. C. A.) 204 F. 617. This, of course, does not mean that the claim may be stretched beyond its fair meaning, but merely that it will be given a rational construction. And so the omission of the float and float-chamber from the wording of the claim will be supplied, as without those elements the device would not be operable. With the idle, the case is somewhat different, as it is not clear that it is absolutely essential in the operation of the carburetor. Certainly, though, it is merely an appurtenant feature, and the unitary character of the device is not destroyed by its omission from or inclusion in the claim.

The master places considerable emphasis on the use of the words "in a carburetor" at the beginning of the claim to support his argument that the patent covered only a subcombination in the larger combination comprising the carburetor. No such emphasis was, however, placed on these same words in Oehring v. Fox, supra, although the claim there did not specifically include all of the component elements of the drill. Nor did they have any such effect in Conroy v. Penn Electrical & Mfg. Co. (C. C. A.) 199 F. 427, although the claims there were much more comprehensive than they were in the Oehring Case, and the concluding words "substantially as described," as appearing in the claims in that case, added nothing of interpretative importance. National Tube Co. v. Mark (C. C. A.) 216 F. 507.

■ The defendant has cited cases in this circuit, which, it is insisted, sustain the proposition that, even though the patented device may possess the characteristics of a unitary structure, still the plaintiff is not entitled to all of the profits if the patented features are merely improvements over the prior art. Thus in Metallic Rubber Tire Co. v. Hartford Rubber Works (C. C. A.) 275 F. 315, the patent was for a metallic tread in an automobile tire, and it was said that there should be an apportionment of profits, although it did not appear that there were any profits to apportion; and in Taylor Mfg. Co. v. Steuernagel (C. C. A.) 19 F.(2d) 298, there was merely a slight improvement in a screw clamp used by carpenters, and it was held that the advance was not of sufficient importance to entitle the plaintiff to the entire profits on the sale of the clamp. In Rockwood v. General Fire Extinguisher Co. (C. C. A.) 37 F.(2d) 62, 65, it was held that the invention lay in the counterweight for a dry pipe valve, and that the facts appearing in the record did not "warrant holding that the profits were made by the use of the article as an entirety." It was therefore decided that there should be an apportionment between the patented and unpatented features, but a substantial recovery was allowed on the basis of a reasonable royalty, and it may well be that this had some influence on the decision as to apportionment. However, the underlying principle running through these cases is that the plaintiff cannot recover all of the profits if the patent is for a mere minor improvement which is not a substantial advance over the prior art. In the present case, there is such a substantial advance, and the patented feature dominates and controls the entire structure, and I can see no reason, therefore, why the plaintiff should not be entitled to all of the profits resulting from the infringing sales.

■ I think, also, that the entire salable value of the infringing carburetor was due to the Mock invention. Wales v. Waterbury Mfg. Co. (C. C. A.) 101 F. 126; Armstrong v. Belding Bros. & Co. (C. C. A.) 297 F. 728; Vandenburgh v. Concrete Steel Co. (C. C. A.) 278 F. 607; Electrical Engineers Equipment Co. v. Champion Switch Co. (D. C.) 49 F.(2d) 359. The defendant sold during

the accounting period both single and double venturi carburetors in great numbers; and it only sold double venturi carburetors because its customers demanded that type for use in particular cars. It is clear, therefore, that the infringing sales were, to quote Judge Hough in Armstrong v. Belding Bros. & Co., supra, at page 731 of 297 F.; made by the defendant, "under compulsion, viz. the compulsion of their own customers." And the inference is inescapable that, if it had not been for the patented feature, there would not have been any such sales at all.

But it is pointed out by the defendant that after the decree it gave up manufacturing double venturi carburetors, and went back to the single tube type, and that its customers were satisfied with the changed construction. That may well be, but it does not prove that the infringing sales would have been made if the patented feature had been absent. As well might it have been said with respect to the skein thread holder in Armstrong v. Belding Bros. & Co., supra, that the thread would still have been sold even if the patented holder had been absent; and yet the plaintiff in that case was allowed to recover the entire combined profit realized on sales of the thread and the holder on the ground that the sales would not have been made at all if it had not been for the patented feature.

█ It is to be remembered also that the defendant commenced selling the infringing carburetors with knowledge of the Mock invention. Mr. Heftler, defendant's president, stated as his reason for manufacturing double venturi carburetors, "I didn't think it would infringe, and I wanted to test this patent."

And, even after the entry of the decree on the decision of the Circuit Court of Appeals, the defendant twice attempted, without success, to alter the structure of the infringing carburetor in order to escape from the operation of the decree. So the case is one where it may properly be said that any doubts and difficulties should be resolved against the defendant. Providence Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566.

█ I think this effectually disposes of the main contention in the case, unless it be that some independent value should be assigned to the idle in the unitary structure of the patent. I do not believe, however, the idle had any such independent value, but, regardless of whether it did or not, I am clear that it was the duty of the defendant to point it out, and to show what, if any, portion of the profits were fairly attributable to the idle's presence in the infringing carburetor. Manifestly the plaintiff went far enough to demonstrate the impossibility of itself making any such segregation, and, if an apportionment was required, the burden was on the defendant to make it. Elizabeth v. American Nicholson Paving Co., 97 U. S. 126, 24 L. Ed. 1000; Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co., 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653.

It follows that the plaintiff's exceptions to the report numbered 10, 11, 12, 13, 14, and 15 are sustained, and that all other exceptions, of both the plaintiff and the defendant, are overruled; and the plaintiff may have a decree against the defendant for $277,420.58, with interest from July 9, 1930, the date of the filing of the report.