FILED

AUG 06 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.  NV-13-1261-KiJuTa |
| MARK DINGLEY, | Bk. No.  3:13-bk-50648-BTB |
| Debtor. | |
| YELLOW EXPRESS, LLC; YELLOW LOGISTICS, LLC, | |
| Appellants, | |
| v. | **O P I N I O N** |
| MARK DINGLEY, | |
| Appellee. | |

Argued and Submitted on January 24, 2014
at Las Vegas, Nevada

Filed - August 6, 2014

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Bankruptcy Judge, Presiding

_____

Appearances:    Mark D. Wray, Esq., argued for appellants
                Yellow Express, LLC and Yellow Logistics, LLC;
                Christopher P. Burke, Esq., argued for
                appellee Mark Dingley.

_____

Before:  KIRSCHER, JURY and TAYLOR, Bankruptcy Judges.

Opinion by Judge Kirscher
Concurrence by Judge Jury

KIRSCHER, Bankruptcy Judge:

Yellow Express, LLC and Yellow Logistics, LLC (collectively, "appellants") appeal from the bankruptcy court's order sanctioning appellants $1,500 for violation of the automatic stay. Following precedent of the Ninth Circuit Court of Appeals ("Ninth Circuit"), first decided under the Bankruptcy Act of 1898, establishing that a civil contempt proceeding is not subject to the automatic stay, we REVERSE.

## I. FACTS[1]

**A. Prepetition Facts**

In 2009, appellants filed an action in the Second Judicial District Court in Washoe County, Nevada, Case No. CV09-02392 against Mark Dingley ("debtor") and two LLCs which he owned and controlled, M&M Tow & Transport, LLC and Superior Tow and Transport Service, LLC (collectively, "the LLCs"). The operative first amended complaint ("state court action") alleged claims for claim and delivery, unjust enrichment, negligence, conversion and constructive fraud against debtor and the LLCs (collectively, "defendants"), based on the tow, storage and disposition of a semi-truck and trailer which belonged to Yellow Express and was leased to Yellow Logistics. The state court action included no alter ego allegations.

Initially, defendants defaulted and, following a prove-up hearing, judgment was entered against them in the total sum of

---

[1] The facts are largely undisputed and are drawn from debtor's Motion to Enforce Automatic Stay and appellants' Opposition to Motion to Enforce Automatic Stay.

$300,000. Subsequently, defendants moved to set aside the default judgment, which was granted. The state court then ordered that a hearing be held on sanctions for their willful failure to appear for depositions. At the hearing on June 26, 2012, the state court ordered defendants to pay sanctions to appellants in a sum not to exceed $6000 for attorneys' fees and court reporter costs. Appellants subsequently filed an affidavit, which fixed the sanctions at $4078.35.

Defendants did not pay the sanctions. On March 25, 2013, appellants filed an application for an order to show cause regarding contempt for defendants' noncompliance with the June 26, 2012 order. On April 2, 2013, the state court judge issued the order to show cause ("OSC"), ordering defendants to appear on April 25, 2013, to show cause why they should not be held in contempt for nonpayment.

## B. Postpetition Facts

On April 8, 2013, debtor filed a Chapter 7[2] proceeding in the Nevada bankruptcy court. Although his membership interest in the LLCs was disclosed in debtor's schedules, the LLCs did not file independent cases. Debtor scheduled appellants as creditors, and the court mailed notice of the filing of the bankruptcy case to appellants' attorney Mark D. Wray ("Wray") on April 11, 2013. On April 24, 2013, debtor's state court counsel advised Wray of the bankruptcy filing and the automatic stay

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" refers to the Federal Rules of Civil Procedure.

provided by § 362(a). On the following day, debtor's bankruptcy attorney also advised Wray of the stay. Wray, on April 24, 2013, wrote debtor's bankruptcy attorney acknowledging the notification of debtor's bankruptcy filing and inquiring why the OSC could not proceed given the law established by several noted cases. Despite the bankruptcy filing notices and given his response to opposing counsel, Wray declined to request the state court to vacate the OSC because: (1) the LLCs had not filed and did not receive the benefit of the stay; and (2) his preliminary research led him to believe that Ninth Circuit authority excepted a state court contempt proceeding from the automatic stay. In making this second assertion, he relied on David v. Hooker, Ltd., 560 F.2d 412 (9th Cir. 1977), and Dumas v. Atwood (In re Dumas), 19 B.R. 676 (9th Cir. BAP 1982).

Debtor's attorney responded that she did not have time to review his cases, but she continued to assert that the contempt hearing was a violation of the automatic stay and that the LLCs should get the benefit of debtor's stay because he listed his interest in them in his schedules. She then filed a Notice of Bankruptcy Filing in the state court on the same day. The state court responded to that Notice by vacating the hearing. On the following day, it issued an order requiring briefing from the parties on the applicability of the automatic stay to the contempt hearing. Appellants' brief was due ten days after the order and defendants' brief was due in another ten days.

Appellants filed their state court brief timely on May 1, 2013, repeating the arguments they made to debtor's counsel that the automatic stay did not apply to nondebtor co-defendants and

-4-

that the contempt proceeding was excepted from the stay under Hooker and Dumas. Debtor did not file a brief in state court. Instead, on May 3, 2013, he filed a Motion to Enforce Stay and For Award of Mandatory Sanctions Pursuant to 11 U.S.C. § 362(k) in the bankruptcy court. Simultaneously, debtor filed an Ex Parte Application for Order Shortening Time, requesting an expedited hearing on the motion since his brief in state court was due. On May 6, 2013, the bankruptcy court granted the application for shortened time and set the hearing for May 10, 2013, with opposition papers due no later than noon, May 9, 2013.

In his Motion to Enforce Stay, debtor asserted that the prosecution of the contempt proceeding against him was a violation of § 362(a) and that the bankruptcy court filing divested the state court of jurisdiction to rule on the effect of the automatic stay on its proceedings, relying on Gruntz v. Cnty. of Los Angeles (In re Gruntz), 202 F.3d 1074, 1080 (9th Cir. 2000) (en banc). Debtor's motion further sought an order halting the state court action and an award of attorney's fees and punitive damages based on appellants' willful violation of the stay. Appellants timely[3] filed their Opposition to Motion to Enforce Stay, asserting the same arguments which they had previously made to debtor's counsel. Relying on pre-Gruntz non-binding authority, they contended that the state court had concurrent jurisdiction to determine whether the automatic stay

---

[3] Wray complained that he had asked debtor's attorney for an extension of time to file but that his request fell on deaf ears.

-5-

applied to its proceedings. Next, pointing out that the LLCs were separate legal entities from debtor and that the contempt proceeding was against those entities, not his membership interest, appellants argued the automatic stay did not apply to the LLCs and the contempt proceeding should continue against them. As authority, they cited Groner v. Miller (In re Miller), 262 B.R. 499, 503 (9th Cir. BAP 2001), which in turn relied on Advanced Ribbons & Office Prods., Inc. v. U.S. Interstate Distrib., Inc. (In re Advanced Ribbons & Office Prods., Inc.), 125 B.R. 259, 263 (9th Cir. BAP 1991), and Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp., 797 F.2d 227, 230 n.4 (5th Cir. 1986) ("The well established rule is that an automatic stay of judicial proceedings against one defendant does not apply to proceedings against co-defendants.").

Appellants also contended that state court contempt proceedings were exempted from the automatic stay, citing again Hooker and Dumas and emphasizing to the bankruptcy court that debtor's papers did not address the holding of these cases. Finally, appellants noted that the only action they had taken which allegedly violated the stay was filing the brief in the state court pursuant to that court's request.

At the hearing in the bankruptcy court, debtor's counsel, contrary to the position she had initially taken with appellants' counsel, conceded that the stay did not apply to the LLCs. However, she argued that it did apply to debtor and that appellants had violated that stay by filing their brief in state court, which urged that court to proceed against debtor. She attempted to distinguish the Ninth Circuit authority excepting

-6-

contempt proceedings from the stay by arguing they involved bad behavior and "criminal contempt." Despite arguments to the contrary from Wray, the bankruptcy court announced categorically that appellants could not proceed against debtor and that it was prepared to issue an order staying the state court action against him with no other relief granted.

Debtor's counsel then asserted that her client was broke and that she had incurred $1500 in attorney's fees to stop the affirmative action against him. After reading the brief which appellants had filed in state court,[4] the court announced:

> "The automatic stay in bankruptcy court does not shield Mr. Dingley from his willful disobedience of the Court's lawful order."[5] I find that you're in contempt of court for urging the district court to extract from Mr. Dingley money for an order that was entered prebankruptcy which is certainly dischargeable. He can certainly be hauled into court for postbankruptcy conduct, but you cannot use the district court to try and recover money for contempt or otherwise that has occurred prior to the bankruptcy. I am awarding $1500 in sanctions against you.

Hr'g Tr. (May 10, 2014) 16:11-22. On May 17, 2013, the bankruptcy court entered the Order on Debtor's Motion to Enforce Automatic Stay and For Award of Mandatory Sanctions Pursuant to 11 U.S.C. § 362(k). Appellants paid the sanction and timely appealed.

///

---

[4] The bankruptcy judge said his court was very "green" and he did not print out the papers. When he learned the state court brief was attached as an exhibit to the Motion, he read it while on the bench.

[5] The court apparently read from the brief.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Whether the bankruptcy court erred in ruling that appellants violated the automatic stay; and

B. Whether the bankruptcy court erred in awarding sanctions of $1500.

## IV. STANDARDS OF REVIEW

A bankruptcy court's determination that the automatic stay was violated is a question of law subject to de novo review. Cal. Emp. Dev. Dep't v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147, 1150 (9th Cir. 1996).

An award of sanctions is reviewed for abuse of discretion. Nash v. Clark Cnty. Dist. Attorney's Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012). The bankruptcy court abuses its discretion when it fails to identify and apply "the correct legal rule to the relief requested," or if its application of the correct legal standard was "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" United States v. Hinkson, 585 F.3d 1247, 1262-63 (9th Cir. 2009) (en banc).

///
///
///
///
///

# V. DISCUSSION[6]

## A. The Automatic Stay and Sanctions for Willful Violation

The automatic stay of § 362(a), as asserted to be applicable here, provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of--
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> >
> > (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; . . . .
>
> . . . .

Section 362(k)(1) provides for an order for sanctions if a party willfully violates the stay:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Before imposing sanctions, the bankruptcy court must find that a violation of the stay was willful. The test for determining whether a violation of the automatic stay is willful is: (1) whether the appellants knew of the stay; and

---

[6] We acknowledge debtor submitted a letter pursuant to Fed. R. App. P. 28(j). Appellants responded to debtor's letter. We reviewed the submissions and have concluded, given the record and issues before us, that the submitted case involves issues we do not reach in this Opinion.

(2) whether the violation of the stay was intentional. <u>Goichman v. Bloom (In re Bloom)</u>, 875 F.2d 224, 227 (9th Cir. 1989). "Intentional" does not mean a specific subjective intent to violate the stay. <u>Pinkstaff v. United States (In re Pinkstaff)</u>, 974 F.2d 113, 115 (9th Cir. 1992). It is irrelevant whether the party believed in good faith that it had a right to the property at issue. <u>In re Bloom,</u> 875 F.2d at 227.

Willfulness is a question of fact reviewed for clear error. <u>Safety Nat'l Cas. Corp. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.)</u>, 303 B.R. 299, 303 (D. Del. 2003).

Appellants contend that the bankruptcy court erred: (1) because the stay did not apply to the state court civil contempt proceeding under applicable Ninth Circuit precedent; and (2) even if it did apply, the act of filing a brief in state court, which arguably had jurisdiction to determine whether the stay applied to its proceeding, was not a willful violation of the stay. We address these arguments below, insofar as necessary to decide this case.

**B.    Exclusive Jurisdiction of the Bankruptcy Court**

As a preliminary matter, appellants assert that the state court had concurrent jurisdiction with the bankruptcy court to decide whether the stay applied to its proceeding, citing <u>Fid. Nat'l Title Ins. Co. v. Franklin (In re Franklin)</u>, 179 B.R. 913, 925 (Bankr. E.D. Cal 1995). <u>Franklin</u> is inapplicable to this issue as it dealt with subject matter jurisdiction of a non-core proceeding. To the contrary, the Ninth Circuit has definitively held that the applicability of the automatic stay is within the exclusive jurisdiction of the bankruptcy court. In <u>Gruntz</u>, 202

-10-

F.3d at 1083, the Ninth Circuit disregarded state court authorities and nonprecedential cases in ruling:

> In sum, by virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay. "The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land."

Therefore, only the bankruptcy court had jurisdiction to determine whether the automatic stay applied to the state court contempt proceeding; the state court did not have concurrent jurisdiction. Id. at 1082-83.

## C.    Automatic Stay and State Court Contempt Proceedings

The Ninth Circuit has created a bright-line rule on whether the automatic stay applies to state court contempt proceedings, whether they are based on nonpayment of a monetary sanction or some other behavior which violates a state court order:  if the sanction order "does not involve a determination [or collection] of the ultimate obligation of the bankrupt nor does it represent a ploy by a creditor to harass him" the automatic stay does not prevent the proceeding from going forward. Hooker, 560 F.2d at 418.

Hooker was decided under the Bankruptcy Act of 1898 and interpreted the scope of the stay provided by Rule 401(a) of the former Federal Rules of Bankruptcy Procedure which applied to cases filed under the Act.  The question posed to the Ninth Circuit was whether the district court where a contempt proceeding was pending "had jurisdiction" to proceed after a bankruptcy petition had been filed.  The order violated was not dissimilar to the order in this case:  a discovery sanction

-11-

which directed the defendants to answer interrogatories and pay attorney's fees. The Ninth Circuit reasoned that the basic purpose of the stay was "to protect the bankrupt and to relieve the courts from pointless and needless litigation" over dischargeable debts. Id. at 417. Since the contempt proceeding at issue was ancillary to the underlying debt, the Ninth Circuit found the purpose of the stay was not implicated. Relying on old district court decisions[7] and 1A Collier ¶ 11.02 at 1147-48, the Ninth Circuit noted that the question was not a jurisdictional one since the stay suspended, rather than dismissed, the nonbankruptcy case. Id. at 418. Thus not every aspect of the proceeding was to be suspended, and a proceeding addressing disobedience of a state court order made prior to the stay was not meant to be suspended. Id. Moreover, the Ninth Circuit reasoned that the proceeding did not "'attempt in any way to interfere with the property which had passed to the control of the bankruptcy court; it sought merely to vindicate its dignity which had been affronted by the contumacious conduct of a person who ignored its order.'" Id.

The same issue was first addressed under the Bankruptcy Act of 1978 (the Code) and its automatic stay provided by § 362(a) by this panel in Dumas. Prebankruptcy, the debtor stipulated that he was in contempt of court for violation of a subpoena; a hearing for sentencing for the contempt was scheduled. Prior to the hearing, Dumas filed his bankruptcy petition and asserted

---

[7] In re Hall, 170 F. 721 (S.D.N.Y. 1909), and In re Spagat, 4 F. Supp. 926, 927 (S.D.N.Y. 1933).

-12-

that the automatic stay applied to the sentencing hearing. The Panel determined that no meaningful difference existed between the stay of Rule 401(a) and the automatic stay of § 362(a). It further found that, although the issue was raised as a jurisdictional one in Hooker, the court's reasoning dealt with the propriety of the exercise of that jurisdiction when the stay might apply. Finally, it also found no distinction where a private party, rather than the court itself, initiated the contempt proceeding. Accordingly, it applied the holding of Hooker and concluded that the state court's post-bankruptcy sentence for contempt was not stayed.

Appellants cited these authorities to debtor's counsel and eventually to the bankruptcy court. Debtor's counsel tried to distinguish them by claiming the contempt proceedings at issue in those cases were criminal and the holdings did not apply to civil contempt. As noted above, this argument was erroneous. The bankruptcy court did not acknowledge them at all, turning aside the arguments:

> You can't[8] proceed against whatever distributions may come to Mr. Dingley from them [the LLCs], but you cannot proceed against Mr. Dingley. And even if Judge Sattler orders you to proceed against Mr. Dingley, you will get a sanction from me because you've violated – you will have violated the automatic stay, and the fact – and Judge Sattler, if he proceeds against Dingley, he has violated the automatic stay . . . .

Hr'g Tr. (May 10, 2013) 13:1-8.

---

[8] The bankruptcy court may have meant "can," given the context of the discussion between counsel and the bankruptcy court and the ability to pursue postpetition chapter 7 distributions from the LLCs.

-13-

> I find that you're in contempt of court for urging the district court to extract from Mr. Dingley money for an order that was entered prebankruptcy which is certainly dischargeable.

Id. at 16:14-17.

Other courts have followed Hooker and Dumas in this circuit. Most notably (and recently) the district court of Hawaii cited Hooker with approval in crafting a totality of the circumstances analysis of the "judicially created . . . exception to § 362(a) for civil contempt proceedings in limited circumstances." Kukui Gardens Corp. v. Holco Capital Grp., 675 F. Supp. 2d 1016, 1026 (D. Haw. 2009). The Kukui court distinguished between contempt proceedings intended to effectuate collection of a judgment and those intended to uphold the dignity of the court. Id. If the purpose of the contempt is to "punish a contemnor and uphold the dignity of the court," it found the automatic stay does not apply, id.; however, in making this statement, it clarified that it was speaking of civil, not criminal contempt. Moreover, in addressing the test as totality of circumstances, the court actually relied on Lowery v. McIlroy & Millian (In re Lowery), 292 B.R. 645, 650 (Bankr. E.D. Mo. 2003), rather than any Ninth Circuit precedent. The Hooker and Dumas precedent appears to be more a bright-line test than a totality of circumstances test.

This judicially-crafted exception has been narrowly construed even by the Ninth Circuit. In Bloom, the federal contempt proceeding arose out of a post-judgment deposition that Goichman scheduled in advance of a hearing on an exemption claim asserted by Bloom to a garnishment. 875 F.2d at 225. Bloom

-14-

filed her bankruptcy petition after the date set for the deposition, but prior to the scheduled date for the exemption claim hearing. Goichman was notified of the bankruptcy petition; Bloom attended neither the deposition nor the exemption claim hearing. The district court, after the hearing, denied the exemption claim. Goichman moved for contempt against Bloom for, among other things, her nonattendance at the deposition. The district court held another hearing and ordered Bloom to convey partnership assets to Goichman as security for the judgment and fined Bloom $500 for contempt for her failure to attend the deposition. The district court made a minute entry for the fine; however, the fine was not included in the final order.

After various procedural maneuvers in district court, which are not relevant here, Bloom filed an adversary proceeding in the bankruptcy court asserting a stay violation. The bankruptcy court found Goichman violated the stay by proceeding in district court after the bankruptcy filing. The district court affirmed and the Ninth Circuit also affirmed. Since the district court relief sought by Goichman was ordering the appointment of a receiver, ordering compliance with the prepetition consent decree, striking the exemption claim and ordering the transfer of assets of the bankruptcy estate to himself, these proceedings did violate the stay. Id. at 226-27.

This limitation on the breadth of Hooker was followed in the unpublished decision of the Federal Circuit, In re Long, 318 F. App'x 891, 894 (Fed. Cir. 2008), where the postbankruptcy contempt proceedings related to enforcement of the judgment not

-15-

"improper conduct during litigation."

As noted in Debtor's brief, the Hooker/Dumas decisions have drawn sharp criticism in other bankruptcy courts. See Atkins v. Martinez (In re Atkins), 176 B.R. 998, 1005 (Bankr. D. Minn. 1994) ("With all due respect to the courts that rendered these decisions [Hooker and Dumas], . . . they are not well-founded."); Dock C-Food, Ltd. v. Cherry (In re Cherry), 78 B.R. 65, 70 (Bankr. E.D. Pa. 1987) ("We would be inclined to recognize as exemptions from the power of the stay only those specifically set forth in 11 U.S.C. § 362(b), not court-created exemptions in cases decided under the Bankruptcy Act . . . ."). A common theme of these contrary views is that when Congress enacted the Bankruptcy Code in 1978, it provided specific statutory exceptions to the automatic stay in § 362(b), making the judicially created exemption under the Act improvident. Since Hooker was decided before the Code was adopted, if Congress had wished to include contempt proceedings under the exceptions to the stay, it could have done so in § 362(b).

Other courts have attempted to distinguish Hooker and Dumas. These courts assert that if the contempt proceeding is to deter wrongful conduct such as showing disrespect to the court or filing a frivolous appeal, such contempt proceeding should be allowed to proceed, whereas if a creditor is merely attempting to collect money due under a court order it should be stayed. See In re Musaelian, 286 B.R. 781, 782 (Bankr. N.D. Cal. 2002). The Musaelian court said the state court "alone" would not be stayed if the contempt proceeding was for public policy purposes, but that if the creditor or his attorneys

-16-

participated "in any way other than pursuant to [a] direct and unsolicited order of the state court, they risk liability for violation of the automatic stay." Id. The Musaelian court further denied relief from stay so the creditor could not pursue collection of any monetary amount associated with any private interest furthered by pursuing any discovery sanction order. However, Hooker and Dumas made no such distinction between a public policy and a private interest analysis, since both cases involved monetary sanction orders arising from contempt proceedings and both authorized recovery of the monetary sanctions associated with the discovery violations.

Still other courts have excepted nonbankruptcy contempt proceedings arising from sanction orders by applying one of the statutory exceptions provided in § 362(b). The Seventh Circuit in Alpern v. Lieb, 11 F.3d 689, 690 (7th Cir. 1993), relied on the police power exception of § 362(b)(4) when determining that enforcement of a Civil Rule 11 sanction was not stayed, even when the Civil Rule 11 motion was brought by a private party. Similarly, the Ninth Circuit in Berg v. Good Samaritan Hosp. (In re Berg), 230 F.3d 1165 (9th Cir. 2000), used the police power exception when determining that an action to collect an attorney sanction for filing a frivolous appeal was not subject to the automatic stay. In both Alpern and Berg the payment at issue was to a private party for attorney's fees, not the court.

Although we recognize these different approaches to the issue before us, the precedent of this circuit is set by Hooker as followed post-Code by Dumas: a contempt action for nonpayment of court-ordered sanctions is exempted from the

-17-

automatic stay unless the proceeding turns on the determination or collection of the underlying judgment. We acknowledge the strength of the points made in the concurrence. We ultimately determine, however, that it is for the Ninth Circuit to make the determination as to the continued validity of the <u>Hooker</u> bright-line test.

Applying this rule here, the contempt proceeding in the Nevada state court was not subject to the stay. Debtor had been ordered to pay attorney's fees and costs to Appellants due to his noncooperation with discovery. The relevant civil contempt proceeding arose from his nonpayment under that order. These facts parallel those in <u>Hooker</u> and <u>Dumas</u> which provide the rule of law.

Consequently, the bankruptcy judge erred when he found appellants willfully violated the automatic stay; in this context, no stay existed to violate.[9] The sanction award also was error.

## VI. CONCLUSION

For the reasons set forth above, we REVERSE the finding of a violation of the automatic stay and the order to pay sanctions.

Concurrence begins on next page.

---

[9] The bankruptcy court's oral findings on the willful nature of the violation are sparse. However, since no violation occurred, we do not address the sufficiency of these findings.

JURY, Bankruptcy Judge, Concurring:

With reluctance, I concur with the Panel's decision reversing the bankruptcy court's decision finding appellants in contempt for violating the automatic stay of § 362.  We are compelled to follow the holding in Hooker, which in turn, was followed in Dumas.  See Salomon N. Am. v. Knupfer (In re Wind N' Wave), 328 B.R. 176, 181 (9th Cir. BAP 2005) (bankruptcy panel is bound by its previous precedent).  Nonetheless, I write separately because I believe that Hooker's judicially-created rule excepting a contempt action for nonpayment of court-ordered sanctions from the automatic stay is not consistent with the modern breadth of the automatic stay espoused in Ninth Circuit case law and at odds with the plain language of § 362(b).

The issues decided by the Hooker court highlight just how undeveloped the concept of the stay in bankruptcy was at the time the decision was rendered.  Rather than questioning whether a bankruptcy stay precluded a district court from conducting a contempt proceeding arising from noncompliance with discovery, the issue was initially posed as whether the district court had jurisdiction to issue the order of contempt after the bankruptcy petition was filed.  The Ninth Circuit recognized the question was not jurisdictional because the stay merely "suspends the proceedings."  That the Circuit was even asked to consider a jurisdictional impact, however, illustrates how novel the stay concept was at the time.

Moreover, Hooker interpreted the impact of a stay provided by then Rule 401(a), a stay limited in scope when compared to

-1-

the today's version of § 362(a). Rule 401(a) became effective in 1973 and provided:

> The filing of a petition shall operate as a stay of the commencement or continuation of any action against the bankrupt, or the enforcement of any judgment against him, if the action or judgment is founded on an unsecured provable debt other than one not dischargeable under clause (1), (5), (6), or (7) of section 35(a) of this title.

At the time of its ruling, the court noted that no cases had discussed the precise scope of the Rule 401(a) stay. Hooker, 560 F.2d at 417 n.8. The court, however, was persuaded by the concept that the purpose of the Rule 401 stay was only to prevent adjudication or collection of the underlying unsecured debt, such that collateral proceedings like enforcement of discovery orders did not fall within that province. Thus, the court decided that continuing with the district court contempt proceeding did not violate the Rule 401 stay. This holding established the rule of law applied by the Panel in Dumas.

In the meantime, the Bankruptcy Act of 1978 was enacted and along with it came the automatic stay of § 362(a) and, perhaps of equal importance, a list of statutory exceptions to the stay provided by § 362(b). "[I]n enacting § 362 in 1978, Congress significantly broadened the scope of the automatic stay, an expansion that had begun only five years earlier with the adoption of the Bankruptcy Rules in 1973 . . . . In the face of the greatly increased scope of § 362, it was necessary for Congress to limit this new power expressly." Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 504 (1986) (citations omitted) (noting that the express exceptions to the stay were meant to overrule certain judicial expansions of the

stay).

Section 362 has continually expanded over decades, with the petition now staying all entities from

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> . . .

> [and] (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

Clearly, the plain language of the statute today shows that the reach of the stay is much broader than that previously provided by Rule 401(a). Incredibly, at least to me, the <u>Dumas</u> Panel found the "present statute and the former rule are essentially similar." <u>In re Dumas</u>, 19 B.R. at 677. Because of that perceived similarity, the Panel, without any discussion of the statutory exceptions then listed in § 362(b), held that the rule in <u>Hooker</u> controlled the outcome of the case — a contempt proceeding arising from a discovery dispute like <u>Hooker</u>.

Since <u>Hooker</u>, Ninth Circuit case law has continually recognized and preserved the broad scope of the stay outlined in § 362(a). In <u>Schwartz v. United States (In re Schwartz)</u>, 954 F.2d 569 (9th Cir. 1992), the Ninth Circuit ruled that an act taken in violation of the stay was void ab initio. In so ruling, the court explained the importance of the stay:

> [T]he automatic stay plays a vital role in bankruptcy.

It is designed to protect debtors from all collection efforts while they attempt to regain their financial footing. As Congress stated: "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. <u>It stops all collection efforts, all harassment, and all foreclosure actions.</u> It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."

<u>Id.</u> at 571 (emphasis in original).

In the context of determining that the power to interpret the scope of the automatic stay was exclusively held by the bankruptcy courts, the Circuit again emphasized the broad sweep of the stay in <u>In re Gruntz</u>, 202 F.3d at 1081-82:

The automatic stay is self-executing, effective upon the filing of the bankruptcy petition. . . . The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case."

The cases which have echoed this interpretation of the breadth of the stay since <u>Schwartz</u> and <u>Gruntz</u> are legion and need not be cited here. However, more recent decisions emphasize the absolute power of the stay. <u>See</u> <u>Sternberg v. Johnston</u>, 595 F.3d 937, 943 (9th Cir. 2010) ("We have held on several occasions that the automatic stay imposes on non-debtor parties an affirmative duty of compliance" to remedy automatic stay violations.); <u>Eskanos & Adler, P.C. v. Leetien</u>, 309 F.3d 1210, 1215 (9th Cir. 2002) ("Consistent with the plain and unambiguous meaning of the statute, and consonant with Congressional intent, we hold that § 362(a)(1) imposes an affirmative duty to discontinue post-petition collection

-4-

actions."). I cannot help but wonder if the Dumas Panel had been informed by these cases, would it still opine that the Rule 401(a) stay and the § 362 stay were "essentially similar"?

More than just the scope of the stay is in play here, however. Whatever may have been the perceived scope of the stay before the enactment of the Code, Congress has since regulated the exceptions to the stay by statute. When the Bankruptcy Code took effect in 1978, § 362(b) only contained seven types of actions not stayed under § 362(a). See Bankruptcy Reform Act of 1978, Pub. L. No. 95-598 (1978) (superseded by 11 U.S.C § 362(b) (2005)). Between 1990 and 1994, § 362(b) had expanded to eighteen exceptions, then when the Code was modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress added another ten exceptions so that § 362(b) presently specifies twenty-eight categories of actions not barred by the stay.

The legislative history of § 362 illuminates the thinking of Congress when the Code was enacted:

Subsection (b) lists seven exceptions to the automatic stay. The effect of an exception is not to make the action immune from injunction. The court has ample other powers to stay actions not covered by the automatic stay. Section 105 . . . grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court as its adjunct have all the traditional injunctive powers of a court of equity . . . . Stays or injunctions issued under these other sections will not be automatic upon the commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions. By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay. There are some actions, enumerated in the exceptions, that generally should not be stayed automatically upon the

-5-

commencement of the case, for reasons of either policy or practicality. Thus, the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed.

S. Rep. 95-989 (1978), p. 51; H.R. Rep. 95-595 (1977) p. 321 (reprinted in 1978 U.S.C.C.A.N. 5787, 5837).

Congress thus flagged circumstances which it believed, for policy or practical reasons, should not be subject to the stay automatically, shifting the burden to the trustee or debtor to seek a stay if necessary to preserve the estate. Significantly, nowhere in § 362(b) does Congress choose to except contempt proceedings. If Congress had intended to except contempt proceedings in a non-bankruptcy forum from the automatic stay for reasons of policy or practicality, it would have done so expressly and not by silence. The Supreme Court has held that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." Andrus v. Glover Constr. Co., 446 U.S. 608, 616–17 (1980). This recognition presents another source of conflict — by applying the rule in Hooker, we effectively incorporate another exception into § 362(b). That would mean creditors could pursue twenty-nine different types of actions without concern for violating the automatic stay. As this cannot be what Congress intended, it would seem that the statutory exceptions are exclusive.

The oft-quoted maxim of statutory interpretation *expressio unius est exclusio alterius* also tells us that when a legislature "includes particular language in one section of a

-6-

statute . . . it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983). It is true that this principle does not apply "unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it." Marx v. Gen. Revenue Corp., __ U.S. __, 133 S. Ct. 1166, 1175 (2013). Moreover, this rule is a "rule of interpretation, not a rule of law. The maxim is 'a product of logic and common sense,' properly applied only when it makes sense as a matter of legislative purpose." Longview Fibre Co. v. Rasmussen, 980 F.2d 1307, 1313 (9th Cir. 1992). Thus, it can be overcome by a strong indication of contrary legislative intent or policy.

While it is impossible to know if Congress in 1978 considered excepting contempt proceedings from the automatic stay and rejected that concept, it is logical and makes common sense to apply the maxim *expressio unius est exclusio alterius* here. Not including all contempt proceedings within the exclusions to the automatic stay is fully consistent with the legislative purpose behind the automatic stay, which is to stop collection actions against the debtor to give him or her breathing space. I do recognize that exceptions to the automatic stay are based on specific policies and that by allowing a contempt action to proceed the dignity of the court issuing the contempt could be upheld. After all, as opined by more than one court, a debtor should not be allowed to disrespect a court order without consequence by retreating behind the automatic stay of a bankruptcy that he or she

-7-

voluntarily files. But I do not find this policy overcomes the plain language of the statutory exceptions listed in § 362(b).

Further, a bankruptcy court can always grant relief from stay for "cause" to allow the delinquent debtor to face his or her due before the court whose order he or she has disobeyed. The bright-line Hooker exception to the automatic stay for contempt proceedings fails to recognize that not all violations of court orders are of equal magnitude and show disrespect for the court issuing the disobeyed order. Where, as here, the court order was to pay a sum of money to a party litigant for a discovery violation, I view this as an action more to collect money from the debtor than to compel compliance with a court order. Collection of money from the debtor arising from a prepetition debt is just the type of action intended to be stayed by § 362.

As noted above, Hooker and Dumas have drawn criticism from at least one bankruptcy court in the Ninth Circuit and courts in other jurisdictions for the same reasons I assert here. One bankruptcy court analyzed the different types of contempt actions I have highlighted above:

> Every court faces two types of contempt proceedings: those resulting from a private squabble among litigants, where the role of the court is merely to enforce the law and move the litigation to conclusion, and those resulting from acts truly offensive to the court and tending to interfere with the administration of justice. An example of the former would be a discovery sanction; examples of the latter might include disrespectful conduct in court or the bringing of a frivolous appeal. In order for contempt proceedings to go forward after bankruptcy, there must be a direct, unattenuated need for them in order to deter wrongful conduct and not just collect money.

In re Musaelian, 286 B.R. at 782; see also In re Atkins, 176

B.R. at 1005; In re Cherry, 78 B.R. at 70. I agree with these bankruptcy courts that court-created exceptions to the automatic stay should not have survived the Bankruptcy Act of 1978. Accordingly, a party to a state court contempt proceeding, like all others subject to the § 362 stay, should be required to seek relief from the stay for cause, leaving the determination of whether the action should go forward to the discretion of the bankruptcy court. For all these reasons, I conclude that the stay imposed under § 362(a) should "automatically" apply to contempt proceedings in non-bankruptcy forums.